**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:26-cv-05525-GPG-STV

THE CITY OF GLENWOOD SPRINGS

Plaintiff,

v.

JG HOUSING SOLUTIONS, LLC

Defendant.

---

**DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM PURSUANT TO FED. R. CIV. P. 12(b)(6), OR, IN THE ALTERNATIVE, FOR FAILURE TO JOIN A REQUIRED PARTY PURSUANT TO FED. R. CIV. P. 12(b)(7)**

---

Defendant JG Housing Solutions, LLC ("JG Housing"), by and through its counsel, Garfield & Hecht, P.C., respectfully submits this Motion to Dismiss (the "Motion") seeking an Order pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the Complaint for failure to state a claim, or, in the alternative, an Order pursuant to Fed. R. Civ. P. 12(b)(7) to dismiss the Complaint for failure to join a required party. In support of the Motion, JG Housing states as follows:

**CERTIFICATION CONCERNING CONFERRAL**

In accordance with Civ. Practice Standard 7.1B, undersigned counsel communicated with counsel for Plaintiff the City of Glenwood Springs (the "City") regarding the relief requested in the Motion. The City opposes the requested relief.

## INTRODUCTION

In this lawsuit, the City seeks to regulate how the United States carries out federal immigration enforcement.[1] Stripped of its land-use vocabulary, the Complaint asks this Court to compel a private landlord to stop leasing its commercial property to the United States for use as an immigration processing and temporary detention facility, and to impose penalties until the federal government's detention activity ends. But the activity that the City seeks to halt is a federal function carried out by a federal agency—U.S. Immigration and Customs Enforcement ("ICE")—under a lease subject to and governed by federal law. The City may not do indirectly, through the landlord, what the Constitution forbids it to do directly to the United States. *See Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 230 (2023).

Three independent defects require dismissal. First, the Complaint fails to state a claim upon which relief can be granted because the Supremacy Clause and the doctrine of intergovernmental immunity bar the City from using its zoning code to regulate—or to prohibit—the federal government's chosen use of the property, whether the City aims at the United States itself or at the private party who leases to it. *CoreCivic, Inc. v. Governor of N.J.*, 145 F.4th 315, 325 (3d Cir. 2025).

Second, federal law preempts the City's attempt to dictate where ICE may detain individuals subject to immigration enforcement. Congress entrusted the choice of immigration detention locations to the federal executive. *See* 8 U.S.C. § 1231(g)(1). A

[1] The City filed the Complaint against JG Housing on September 25, 2026, in the District Court of Garfield County, Colorado. JG Housing timely removed the case to this Court on October 26, 2026, pursuant to 28 U.S.C. §§ 1332(a) and 1441(a).

local ordinance that forbids the federal government's chosen location is preempted. *See GEO Grp., Inc. v. Newsom*, 50 F.4th 745, 762 (9th Cir. 2022) (en banc).

Third, the United States is a required party under Fed. R. Civ. P. 19—it is the tenant that allegedly performs the challenged conduct and a party to the very lease the City seeks to enjoin—yet the United States cannot be joined because of sovereign immunity, and this civil action cannot proceed in the United States' absence. Although the requested relief runs nominally against JG Housing, its only object is to control what ICE does at the property. JG Housing does not operate the facility, cannot evict its federal tenant, and has no authority to direct ICE's operations. Complete relief is therefore not available among the existing parties: no order against JG Housing can stop ICE's alleged detentions at the property, and the City's requested injunction would place JG Housing in conflict with its obligations under the lease. For these reasons, the Complaint must be dismissed.

**FACTUAL ALLEGATIONS IN THE COMPLAINT**

JG Housing owns and leases commercial property located at 100 Midland Avenue, Suites 110 and 210, Glenwood Springs, Colorado (the "Property"). Compl. ¶ 5. According to the City, "[o]n information and belief," JG Housing and the United States General Services Administration ("GSA") entered into a lease agreement (the "Lease") pursuant to which GSA leases the Property for an administrative office of ICE. *Id.* ¶ 6. At the Property, "ICE conducts investigations, processes detainees or other persons under its jurisdiction, and for temporary holding of detainees who are being processed to other facilities." *Id.* The City alleges, "[o]n information and belief," that the Lease "shall be

governed by Federal law" and that nothing in the Lease waives "the sovereign immunity of the Government." *Id.* ¶ 46.

In 2004, the City's Municipal Code (the "Code") permitted detention facilities within City limits with a special use permit. *Id.* ¶¶ 8 & 12. The City issued GSA a special use permit with an effective date of May 27, 2004, authorizing ICE to temporarily detain individuals at the Property for up to 12 hours. *Id.* ¶¶ 15-19. In March 2026, the City reviewed data allegedly showing that ICE detained individuals at the Property for more than 12 hours on several occasions in 2025, prompting the City's Planning and Zoning Commission, on a scant record, to revoke the special use permit in late April 2026. *Id.* ¶¶ 21-26. Under the current version of the Code, which became effective on August 16, 2018, detention facilities are no longer allowed within City limits. *Id.* ¶¶ 11 & 13.

Despite the revocation of ICE's special use permit, the City alleges that ICE continues to detain individuals at the Property. According to data purportedly reviewed by the City, from May 22, 2026, through August 4, 2026, ICE allegedly detained 27 persons at the Property "in continuing violations of the City's Code." *Id.* ¶ 31. The City's Complaint does not name the United States, GSA, or ICE. Rather, the City is suing only JG Housing, the Property's owner and landlord. The City seeks a judicial declaration that leasing the Property for the challenged use violates the Code, an injunction barring JG Housing from leasing the Property "for detentions," and penalties of $1,000 per day until the alleged detention activity ceases. The City does not object to JG Housing's leasing the Property to the United States as long as ICE does not detain anyone at the Property. *Id.* ¶¶ 43-44.

## LEGAL STANDARD

### I. Fed. R. Civ. P. 12(b)(6)

A motion under Fed. R. Civ. P. 12(b)(6) tests the sufficiency of a plaintiff's complaint and the adequacy of the factual allegations contained therein. *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). To survive a Rule 12(b)(6) motion, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Conclusory allegations are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 678-79.

### II. Fed. R. Civ. P. 12(b)(7)

Dismissal under Fed. R. Civ. P. 12(b)(7) follows a three-part inquiry: (1) whether the absent party is "required to be joined" under Fed. R. Civ. P. 19(a); (2) whether that party "cannot feasibly be joined"; and (3) whether, under Fed. R. Civ. P. 19(b), the action cannot "in equity and good conscience" proceed in its absence, in which case it "should be dismissed." *N. Arapaho Tribe v. Harnsberger*, 697 F.3d 1272, 1278-79 (10th Cir. 2012).

## ARGUMENT

### I. The Supremacy Clause and the doctrine of intergovernmental immunity bar the City from regulating the federal government's use of the Property.

The City's claims rest entirely on the premise that it may forbid JG Housing from leasing the Property to the United States for ICE's detention use. The Supremacy Clause of the U.S. Constitution forecloses that premise. Under the Supremacy Clause, the "Constitution, and the Laws of the United States which shall be made in Pursuance

thereof . . . shall be the supreme Law of the Land." U.S. CONST. art. VI, cl. 2. "[T]he very essence of supremacy" empowers the federal government to "remove all obstacles to its action within its own sphere . . . [and] exempt its own operations from [state or local] influence." *McCulloch v. Maryland*, 17 U.S. 316, 427 (1819).

The intergovernmental immunity doctrine enforces the Supremacy Clause by barring "state laws that *either* regulate the United States directly *or* discriminate against the Federal Government or those with whom it deals (*e.g.,* contractors)," unless Congress has clearly consented. *United States v. Washington*, 596 U.S. 832, 838-39 (2022) (cleaned up). A state law regulates the federal government directly when it "places a prohibition on the Federal Government." *Hancock v. Train*, 426 U.S. 167, 180 (1976). "[A] state law discriminates against the Federal Government or its contractors if it singles them out for less favorable treatment, or if it regulates them unfavorably on some basis related to their governmental status." *Washington*, 596 U.S. at 839 (cleaned up). A state law that violates either prong is invalid unless Congress has "clearly and unambiguously authorized" it. *Id.* at 840. Here, the City seeks both to regulate the United States directly and to discriminate against the United States and JG Housing.

**A. The City seeks to directly regulate ICE's activities at the Property.**

Notably, the City has not sued the United States, GSA, or ICE, yet the City seeks to force the federal government's compliance with the Code by asking this Court to interfere with the United States' existing Lease with JG Housing. "[W]hat cannot be done directly cannot be done indirectly." *Students for Fair Admissions, Inc.*, 600 U.S. at 230. "[T]he activities of federal installations are shielded by the Supremacy Clause from

direct state regulation unless Congress provides clear and unambiguous authorization for such regulation." *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 180 (1988). That immunity does not evaporate because the federal function is carried out on leased, privately owned land or through a private contractor.

Courts have rejected similar local regulation even where the federal agency leases from a private landlord. *See U.S. Postal Serv. v. Town of Greenwich*, 901 F. Supp. 500, 507 (D. Conn. 1995) ("[T]he Court finds that the state building code cannot be applied to the lessors of land to the Postal Service and to the contractors hired to construct postal facilities because it conflicts with federal law."); *see also U.S. Postal Serv. v. City of Hollywood*, 974 F. Supp. 1459, 1463-65 (S.D. Fla. 1997) (same).

The same is true here: the City cannot convert its lack of authority over the United States into authority over the United States' landlord. Congress has committed the siting of immigration detention to the federal Executive. *See CoreCivic*, 145 F.4th at 325 ("Only the federal government has the power to decide whether, how, and why to hold aliens for violating immigration law."). The Immigration and Nationality Act directs that the Secretary of Homeland Security[2] "shall arrange for appropriate places of detention," 8 U.S.C. § 1231(g)(1), a provision that gives the Secretary "broad discretion" to "choose the place of detention," including an express preference for leasing existing facilities. *Newsom*, 50 F.4th at 751; *see also CoreCivic*, 145 F.4th at 327 ("Federal law

[2] Although 8 U.S.C. § 1231(g) refers to the Attorney General, the statute pre-dates the creation of the Department of Homeland Security. This authority now resides with the Secretary of Homeland Security. *See Clark v. Martinez*, 543 U.S. 371, 374 n.1 (2005); *see also* 6 U.S.C. § 557.

gives federal officials discretion to contract for immigration detention.") (citing 8 U.S.C. § 1231(g); 48 C.F.R. § 3017.204-90; 8 C.F.R. § 235.3).

In *CoreCivic*, the Third Circuit held that a state law banning contracts for immigration detention violated intergovernmental immunity because, although it had "the veneer of regulating contractors," it "directly regulates the federal government by telling it how to carry out a core function"—"a direct regulation in everything but name." 145 F.4th at 326.

Here, the City first tried to compel compliance by revoking ICE's permit. When ICE allegedly continued detentions, the City sued ICE's landlord. But "just as states cannot regulate the federal government itself, they cannot regulate private parties in a way that severely undercuts a federal function." *CoreCivic*, 145 F.4th at 322. The City's goal is to end ICE's detention operations at the Property, and a $1,000-per-day penalty on its landlord is an attempt to "dictate the manner in which the federal function is carried out." *Newsom*, 50 F.4th at 757-58.

**B. The City's zoning prohibition discriminates against the federal government and those with whom it deals.**

Because the City's enforcement against JG Housing treats the federal government and those with whom it deals less favorably than others, it also violates the discrimination prong of intergovernmental immunity. A law "discriminates against the Federal Government or its contractors if it singles them out for less favorable treatment, or if it regulates them unfavorably on some basis related to their governmental status." *Washington*, 596 U.S. at 838-39. "[A] regulation imposed on one who deals with the Government has as much potential to obstruct governmental functions as a regulation

imposed on the Government itself." *North Dakota v. United States*, 495 U.S. 423, 437-38 (1990) (plurality opinion).

That principle was recently applied in a case with similar facts. In *Genesis GSA Strategic One, LLC v. Howard County*, the court found a likely Supremacy Clause violation where a local government revoked permits for an ICE detention facility under a law that singled out immigration detention—"a function exclusively of the federal government." No. 26-915, 2026 WL 2294479, at *20 (D. Md. Aug. 10, 2026), *appeal filed* (4th Cir. Aug. 27, 2026); *see also GEO Grp., Inc. v. Ryan*, No. 26-02533, 2026 WL 2501553, at *4 (D. Colo. Aug. 20, 2026) (state law singling out immigration detention center discriminated against contractor operating the center). The same is true of the City's ban on the only detention activity that the federal government alone performs.

## II. Federal law preempts local regulation of where the federal government detains individuals for immigration purposes.

The City's claims independently fail because they are preempted. "The Government of the United States has broad, undoubted power over the subject of immigration," which must be exercised by "one national sovereign, not the 50 separate States." *Arizona v. United States*, 567 U.S. 387, 394-95 (2012). State and local law "must . . . give way" where Congress has occupied the field or where the law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* at 399-400.

As detailed above, Congress has vested the Secretary of Homeland Security with the authority, in matters of immigration, to "arrange for appropriate places of detention." 8 U.S.C. § 1231(g)(1); *see also* 48 C.F.R. § 3017.204-90 (providing that ICE

may enter into contracts “for detention or incarceration space or facilities, including related services”). A local ordinance that forbids the federal government’s chosen detention location “frustrates that congressional intent” and is preempted; “interference with the discretion that federal law delegates to federal officials goes to the heart of obstacle preemption.” *Newsom*, 50 F.4th at 762-63.

## III. In the alternative, the Complaint should be dismissed under Fed. R. Civ. P. 12(b)(7) because the United States is a required party that cannot be joined.

### A. The United States is a “required party” under Fed. R. Civ. P. 19(a).

A person is a “required party” for purposes of Rule 19(a) if: “in that person’s absence, the court cannot accord complete relief among existing parties;” or “that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person’s absence may: (i) as a practical matter impair or impede the person’s ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.” Fed. R. Civ. P. 19(a)(1)(A)-(B).

The United States is a required party because the Court cannot accord complete relief among existing parties in the United States’ absence. Ultimately, the City wants ICE to stop detentions at the Property, but the United States is not a party to this lawsuit. The City is trying to force ICE compliance by suing JG Housing, but the City does not allege that JG Housing has control over ICE’s operations at the Property. The City does not allege that the Lease term will end soon, that the Lease is up for renewal, or that JG Housing has the right to terminate the Lease. An order enjoining JG Housing from leasing the Property to ICE “for detentions” will not afford the City any relief.

The United States is also a required party because the United States claims an interest in the subject of this action and is so situated that disposing of the action in the United States' absence may impair or impede the United States' ability to protect that interest. The United States' interest in this action is apparent: the United States is the tenant that allegedly engages in the conduct the City seeks to enjoin and is a party to the Lease the City asks this Court to declare unlawful and to enjoin JG Housing from performing. A judgment adjudicating the lawfulness of ICE's use of the Property and barring JG Housing from leasing the Property "for detentions" would, "as a practical matter[,] impair or impede" the United States' ability to protect those interests. *N. Arapaho Tribe*, 697 F.3d at 1279. Indeed, as recognized by the Tenth Circuit "no procedural principle is more deeply imbedded in the common law than that, in an action to set aside a lease or a contract, all parties who may be affected by the determination of the action are indispensable." *Jicarilla Apache Tribe v. Hodel*, 821 F.2d 537, 540 (10th Cir. 1987) (citation omitted). Courts applying Fed. R. Civ. P. 19 have held that where a plaintiff "essentially seek[s] to enjoin the performance of the leasing agreement," the party to that lease "undoubtedly has an interest" and is "a required party under Rule 19(a)(1)(B) because disposing of this lawsuit in its absence would impair its ability to protect its interest." *Le v. Asset Campus USA LLC*, No. 20-447, 2021 WL 4147013, at *3 (N.D. Fla. Mar. 1, 2021).

Moreover, disposing of the action in the United States' absence would leave JG Housing subject to a substantial risk of incurring inconsistent obligations because of the United States' interest. The City seeks to enjoin JG Housing from leasing the Property

to the United States "for detentions." If the Court were to grant the City that relief, JG Housing would be in an impossible position. JG Housing has an existing contract with the United States that the City itself alleges is governed by federal law. JG Housing has no ability to evict ICE from the Property or to seek an injunction against ICE. Any dispute between JG Housing and GSA concerning the Lease is subject to the Contract Disputes Act ("CDA"), 41 U.S.C. §§ 7101 *et seq.*, which "encompasses disputes over leaseholds the government creates for itself by agreement." *CanPro Invs. Ltd. v. United States*, 120 Fed. Cl. 17, 21 (2015). "Pursuant to § 1491(a)(2) of the Tucker Act, the Court of Federal Claims has exclusive jurisdiction over all CDA claims." *Boeing Co. v. United States*, 119 F.4th 17, 22 (Fed. Cir. 2024). The Court of Federal Claims "does not have general authority to issue injunctive relief." *Sergent's Mech. Sys., Inc. v. United States*, 157 Fed. Cl. 41, 46-47 (2021); *see also Fed. Realty Partners, LP v. United States*, No. 22-1888C, 2023 WL 9021632, at *5 (Fed. Cl. Dec. 29, 2023) (holding "the plain language of [28 U.S.C.] § 1491(a)(2) does not authorize this Court to issue injunctive relief in CDA cases"). JG Housing is at substantial risk of being ordered to engage in conduct that conflicts with its rights and obligations under the Lease.

**B. It is not feasible to join the United States.**

"The United States, as sovereign, is immune from suit, save as it consents to be sued." *United States v. Dalm*, 494 U.S. 596, 608 (1990); *see also United States v. Miller*, 604 U.S. 518, 527 (2025) (explaining that sovereign immunity "deprives courts of the power to hear suits against the United States absent Congress's express consent"). To bring an action against the United States, the City must identify "a federal law that

waives the sovereign immunity of the United States to the cause of action." *Clark v. United States*, 326 F.3d 911, 912 (7th Cir. 2003); *see also Lane v. Pena*, 518 U.S. 187, 192 (1996) ("A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text and will not be implied.").

The City identifies no federal statute waiving the United States' immunity for a suit to enforce a municipal zoning ordinance against a federal tenant. As a result, it is not feasible to join the United States. *See N. Arapaho Tribe*, 697 F.3d at 1282 (holding that a federally recognized Indian tribe could not be feasibly joined under Fed. R. Civ. P. 19(a) because the tribe was a sovereign and not amenable to suit).

**C. Equity and good conscience require that the case be dismissed.**

"If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). Factors the Court must consider in making that determination include:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
> (2) the extent to which any prejudice could be lessened or avoided by:
> (A) protective provisions in the judgment;
> (B) shaping the relief; or
> (C) other measures;
> (3) whether a judgment rendered in the person's absence would be adequate; and
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b)(1)-(4).

The first factor, whether a judgment rendered in the person's absence might prejudice that person, "is essentially the same as the inquiry under Rule 19(a)(2)(i) [now

styled as Rule 19(a)(1)(B)(i)] into whether continuing the action without a person will, as a practical matter, impair that person's ability to protect his interest relating to the subject of the lawsuit." *Enter. Mgmt. Consultants, Inc. v. United States ex rel. Hodel*, 883 F.2d 890, 894 n.4 (10th Cir. 1989). As detailed above, the United States' absence might prejudice its interest or JG Housing's interest because the City seeks declaratory and injunctive relief that will interfere with their rights and obligations under the Lease. Thus, the first factor weighs in favor of dismissal.

The second factor also militates in favor of dismissal because the potential prejudice to the United States cannot be lessened or avoided without the United States being a party to the lawsuit. No protective provision or limitation on relief could avoid the prejudice. Any order restricting JG Housing's leasing would necessarily operate on the United States' tenancy, and any narrower order (e.g., limited to future leases) would not give the City the relief it seeks.

The third factor is concerned with "the interest of the courts and the public in complete, consistent and efficient settlement of controversies." *N. Arapaho Tribe*, 697 F.3d at 1283. Permitting this litigation to proceed would not "wholly settle the underlying dispute" if the United States is not a party and bound by the judgment. *Id.* As explained above, the City wants ICE detentions at the Property to stop, but an order against JG Housing would not achieve that result. Thus, the third factor supports dismissal.

The fourth factor does not preclude dismissal even assuming the City lacks an alternative forum. *See N. Arapaho Tribe*, 697 F.3d at 1283-84 (affirming dismissal where sovereign immunity precluded joinder and the first three Rule 19(b) factors

favored dismissal even though plaintiff had no remedy); *see also Republic of Philippines v. Pimentel*, 553 U.S. 851, 872 (2008) ("Dismissal under Rule 19(b) will mean, in some instances, that plaintiffs will be left without a forum for definitive resolution of their claims."). For these reasons, dismissal is warranted under Fed. R. Civ. P. 12(b)(7).

## CONCLUSION

The City's claims depend on the unconstitutional premise that it may forbid the United States from using leased space for immigration detention and may penalize the federal government's landlord for the federal government's operations. The Supremacy Clause, the doctrine of intergovernmental immunity, and preemption foreclose the City's claims. In the alternative, the United States is a required party that cannot be joined, and in equity and good conscience this action cannot proceed without it. This action would decide the lawfulness of the United States' own lease and operations without the United States being bound to any order entered by the Court, and expose JG Housing to obligations it has no power to reconcile. Whatever grievance the City may have with ICE, its remedy does not lie against ICE's landlord. Dismissal of this lawsuit against JG Housing is required.

WHEREFORE, JG Housing respectfully moves this Court to (i) dismiss the Complaint with prejudice under Fed. R. Civ. P. 12(b)(6) or, in the alternative, (ii) dismiss the Complaint without prejudice under Fed. R. Civ. P. 12(b)(7), and (iii) grant such further relief as the Court deems proper. JG Housing reserves all rights.

Dated: November 13, 2026

Respectfully submitted,

GARFIELD & HECHT, P.C.

/s/ Christopher D. Bryan
Christopher D. Bryan
Mary Elizabeth Smith
625 E. Hyman Avenue, Suite 201
Aspen, Colorado 81611
Telephone: (970) 925-1936
Fax: (970) 925-3008
E-mail: cbryan@garfieldhecht.com
E-mail: mesmith@garfieldhecht.com
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I certify that on November 13, 2026, a true and correct copy of the foregoing **DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM PURSUANT TO FED. R. CIV. P. 12(b)(6), OR, IN THE ALTERNATIVE, FOR FAILURE TO JOIN A REQUIRED PARTY PURSUANT TO FED. R. CIV. P. 12(b)(7)** was filed with the Court via CM/ECF and served on all counsel of record.

*/s/ Rachael Pudlo*
Rachael Pudlo